# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BERNADETTE A. RAMS, | 1:11-cv-02059 GSA |
| Plaintiff, | **ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |
| v. | |
| MICHAEL ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

## **BACKGROUND**

Plaintiff Bernadette A. Rams ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability insurance and supplemental security income benefits pursuant to Titles II and XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Gary S. Austin.[1]

//
//

---

[1] The parties consented to the jurisdiction of a United States Magistrate Judge. (*See* Docs. 8 & 9.)

1

**FACTS AND PRIOR PROCEEDINGS[2]**

Plaintiff filed applications for benefits in June 2006, alleging disability as of August 21, 2005. AR 115-125. Plaintiff's applications were denied initially and on reconsideration; she then requested a hearing before an Administrative Law Judge ("ALJ"). AR 29-33, 85-90, 93-101. ALJ Sherwin F. Biesman held a hearing and subsequently issued an order denying benefits on April 16, 2009, finding Plaintiff was not disabled. AR 34-43. On March 15, 2011, the Appeals Council granted review. AR 111-114. On September 3, 2011, the Appeals Council found that Plaintiff was not disabled for any period through her date last insured of March 31, 2006, for purposes of disability insurance benefits. With regard to supplemental security income, the Appeals Council found Plaintiff became disabled on March 1, 2008. AR 9-12.

**Hearing Testimony**

ALJ Biesman held a hearing on February 19, 2009, in Los Angeles, California.[3] Plaintiff appeared and testified; she was assisted by attorney Jon Argenziano. AR 56-77.

Plaintiff was born March 20, 1951, and was fifty-seven years old on the date of the hearing. AR 58. She is single and rents a room in a condominium shared with three others. AR 59. Because she is not working, her friend pays the $415 monthly rent. AR 59-60.

Back pain and cataracts were Plaintiff's main complaints at the time of the hearing. AR 60. When asked whether any MRI or CT scan of her back was performed, Plaintiff replied that an x-ray had been done. AR 60. She does not know why an MRI or CT scan were not done and guessed it may have been "because it cost too much." AR 61. Plaintiff is insured through her previous employer, now known as AT&T, and obtains medical treatment through Kaiser. AR 61. She does not know why she was not referred to an orthopedist. AR 61. Plaintiff then stated

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

[3] At the time of the Appeals Council's decision, Plaintiff was residing in Bakersfield.

1  that her treating physician "got [her] going to a back specialist, Dr. Peram," but there has been no
2  mention of "an MRI or any of that other stuff." AR 62.
3         Plaintiff treats her back pain with Tylenol with codeine, number three. AR 63. She takes
4  four tablets a day. AR 68. Plaintiff also takes Ultram, Tramadol and Cyclobenzaprine. The
5  other prescription medications she takes relate to pre-diabetes and thyroid conditions. AR 64.
6  The pain medications do not really help and she cannot take Vicodin as suggested by her doctor
7  because it makes her dizzy. AR 66.
8         The back pain bothers Plaintiff everyday, "practically all the time." AR 65. She never
9  has good days. AR 66. When asked to assign a number between zero and ten to describe her
10  pain, Plaintiff stated that it depends upon what she is doing. If she is doing one load of laundry,
11  when she has completed the task her pain is a ten. She "can barely do anything in the house" that
12  does not cause pain. AR 67. The pain is "just too much" and, as a result, she cannot bend, nor
13  sit or stand "too long." AR 67.
14         Plaintiff uses a cane because she is afraid of falling. Either her back pain or the fact she
15  has broken her leg twice - once after being hit by a car, and then less than a year later after
16  slipping in the shower - or both, make her feel as though she is going to fall if she did not use the
17  cane. AR 72.
18         For thirty years, Plaintiff worked for what is now known as AT&T. She was an operator
19  for twenty years, and then moved into cash management for the last ten years, from 1990 to 2000.
20  AR 67-68, 71. As an operator, the position was largely sedentary; in cash management, however,
21  she was on her feet for seven hours or more. AR 68. More specifically, with regard to the cash
22  management position, Plaintiff worked loading boxes of mail, removing the envelopes from the
23  boxes, placing the mail on a conveyor belt, and ensuring the machine used operated efficiently.
24  She would also sort and separate the checks from the invoices and place them in another box for
25  processing. AR 70. Currently, Plaintiff can sit for about ten to fifteen minutes before she feels
26  "like taking a pill" due to the pain. AR 68.

When she was asked what she did during the day, Plaintiff replied that she cannot "do too much," although she would like to clean the house because she does not work. AR 68-69. She will do a load of laundry or clean the kitchen counters or wash dishes, but not all in the same day. AR 69. If she does too much, she is "near tears" because of the pain. If that happens, she lies on her bed to relax. AR 69. In a typical week - Monday through Friday - Plaintiff is at home and does not go out. AR 69. She shops once a week when her friend Tina takes her shopping. Otherwise, she does not have money or a vehicle and is in pain. AR 70. Although Plaintiff had a pension from AT&T, she elected to take her pension in a lump sum. With those proceeds, she bought a home; however, she then lost the home. AR 71-72, 74.

**Medical Record**

The entire medical record was reviewed by the Court. AR 185-576. The medical evidence will be referenced below as necessary to this Court's decision.

**ALJ's Findings**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard. AR 34-43.

More particularly, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 21, 2005, the alleged onset date. AR 36. Further, the ALJ identified status post-right tibia fracture and back pain as severe impairments. AR 36-39. Nonetheless, the ALJ determined that the severity of the Plaintiff's impairments or combination of impairments did not meet or exceed any of the listed impairments. AR 39.

Based on his review of the entire record, the ALJ determined that Plaintiff has the RFC to perform the full range of light work. AR 39-42.

Next, the ALJ determined that Plaintiff was capable of performing her past relevant work as a telephone operator. AR 42-43. Therefore, the ALJ concluded Plaintiff was not disabled. AR 43.

**Appeals Council's Findings**

Following review, the Appeals Council adopted the ALJ's finding that Plaintiff was not disabled for the period prior to March 1, 2008. AR 9. However, the Appeals Council determined that Plaintiff was in fact disabled for the period beginning March 1, 2008, and thus reversed the ALJ's finding in that regard. More particularly, the Appeals Council found that because Plaintiff was limited to sedentary work, she could not perform her past relevant work as a mail clerk. Moreover, on March 1, 2008, Plaintiff was fifty-six years old, or of advanced age, pursuant to the regulations. Accordingly, the Appeals Council determined that Rule 201.04 directed a finding that Plaintiff was disabled after March 1, 2008. AR 9-11.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

**REVIEW**

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

Here, Plaintiff argues that the Commissioner's denial of disability insurance benefits for the period prior to March 1, 2008, is erroneous.

**DISCUSSION**

***The AC's Finding That Plaintiff Was Not Disabled Prior To March 1, 2008***

Plaintiff argues the Commissioner's finding that she was not disabled prior to March 1, 2008, is erroneous. More particularly, Plaintiff contends the determination is not supported by substantial evidence, and relies upon Social Security Ruling ("SSR") 83-20. (Doc. 12 at 11-18.) On the other hand, the Commissioner argues that substantial evidence supports the finding of a March 1, 2008, onset date. More specifically, the Commissioner contends there is substantial evidence in the record to indicate that Plaintiff's accident of August 21, 2005, did not cause a disabling impairment. (Doc. 16 at 5-9.)

**SSR 83-20**

As a general matter, SSR 83-20 sets forth guidelines for determining the onset date of disability. It directs that the judgment regarding the onset date of disability "must have a legitimate medical basis" and that the ALJ "should call on the services of a medical advisor when onset must be inferred." SSR 83-20. We have explained this ruling to mean that "[i]n the event that the medical evidence is not definite concerning the onset date and medical inferences need to be made, SSR 83-20 requires the [ALJ] to call upon the services of a medical advisor and to

obtain all evidence which is available to make the determination." *DeLorme v. Sullivan*, 924 F.2d 841, 848 (9th Cir. 1991).

*Sam v. Astrue*, 550 F.3d 808, 810 (9th Cir. 2008). Here, the ALJ determined that Plaintiff was not disabled at any time. AR 34-43. Moreover, the Appeals Council determined that Plaintiff was not disabled from the alleged onset date of August 21, 2005, through March 31, 2006, the date last insured. AR 11, 43. In these circumstances, SSR 83-20 does not require the use of a medical expert. *Sam v. Astrue*, 550 F.3d at 809-811. This is because where an ALJ finds that a claimant was not disabled at any time through the date of the decision, the question of when the claimant became disabled does not arise, and the procedures prescribed in SSR 83-20 do not apply. *Id.* at 810.

Moreover, the medical evidence, discussed more fully below, is not indefinite concerning the onset date and medical inferences did not need to be made. There was a legitimate basis for finding an onset date of March 1, 2008.

### The Medical Evidence[4]

In a pain questionnaire dated July 18, 2006, Plaintiff indicated her pain began "before the accident, but moreso [*sic*] afterwards." She indicated the pain was located in her right leg, lower back and right arm, and the pain bothered her "almost all the time." AR 152-154.

Nevertheless, a review of the medical record indicates that Plaintiff's right leg, although broken on two separate occasions, healed and did not incapacitate her for a period of at least twelve months. *See* AR 186-189, 198-202, 205-206, 280-286, 290-294, 324-327, 354 (11/8/05; fracture shows satisfactory progress). Further, and significantly, the record reveals little to no reference, prior to 2008, of back pain.

On or about October 4, 2006, internist Barry Gwartz, M.D., conducted a complete internal medicine evaluation of Plaintiff. AR 207-212. Plaintiff's chief complaint was recorded

---

[4]The medical record contains a number of duplicate copies; to the degree the Court refers to a specific report or note, only one citation will be noted.

7

to be a fractured right leg. She advised Dr. Gwartz that she had "no other complaints, except occasional aches and pains in the upper extremities." AR 207. Upon examination, with specific regard to Plaintiff's back, Dr. Gwartz noted there was "no tenderness," that straight leg raising was negative and that range of motion was within normal limits. AR 210. With regard to the lower extremities, the doctor noted a cast on Plaintiff's right leg. Range of motion was noted to be within normal limits for both knees and hips, as well as Plaintiff's left ankle. AR 210. The doctor noted that Plaintiff's gait was "slightly lurching" as a result of the cast. AR 211. Dr. Gwartz's impression included "[f]ractured right tibia, currently with cast since date of injury on 07/08/2006." AR 211. The doctor concluded that Plaintiff would "probably be wearing the cast on her right leg for at least another two months." AR 211. Nevertheless, Dr. Gwartz concluded that Plaintiff - with the cast - was capable of lifting and carrying ten pounds occasionally and ten pounds frequently, could sit for six hours in an eight-hour day, and stand or walk for two hours in an eight-hour day. AR 211. She was unable to crouch, kneel, stoop or climb, and was precluded from working at heights or near hazardous machinery. AR 212.

In a Physical Residual Functional Capacity Assessment dated October 27, 2006, state agency physician A. M. Faigao opined that Plaintiff was capable of occasionally lifting and carrying twenty pounds, frequently lifting and carrying ten pounds, standing or walking about six hours in an eight-hour day, and sitting about six hours in an eight-hour day. AR 216. Plaintiff was to avoid climbing ladders, ropes or scaffolds, but could occasionally climb ramps or stairs, stoop, kneel, crouch or crawl. AR 217. The state agency physician did not identify any manipulative, visual or communicative limitation. AR 217-218. Plaintiff was to avoid concentrated exposure to machinery and heights. AR 218. It was noted that as of January 24, 2006, Plaintiff's original fracture had healed as reflected on an x-ray, and she had full range of motion. AR 219.

The Appeals Council's finding that the "claimant did not report significant back pain to her physicians at Kaiser Permanente" and that she "received no treatment for her back in 2005

and 2006" is supported by the medical evidence.  The Appeals Council noted that Plaintiff complained of back pain on one occasion in 2007, yet refused to be examined.  Therefore, like the Appeals Council, this Court concludes that prior to March 1, 2008, Plaintiff's severe back impairment did not preclude her from light work.

Plaintiff's argument that the medical record establishes she was "incapable of the full range of even sedentary work for any prolonged period of time since her traumatic injury of August 21, 2005" (Doc. 12 at 17) is simply not accurate.  The medical record establishes as the Appeals Council found - that Plaintiff became disabled as of March 1, 2008.

**Plaintiff's Credibility**

Plaintiff argues the ALJ erred in finding her not credible.  (Doc. 12 at 17-18.)  The Commissioner contends the ALJ offered several bases upon which to find Plaintiff not credible. (Doc. 16 at 8-10.)

A two step analysis applies at the administrative level when considering a claimant's credibility.  *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged.  *Id.* at 1281-1282.  If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his symptoms only if he makes specific findings that include clear and convincing reasons for doing so.  *Id*. at 1281.  The ALJ must "state which testimony is not credible and what evidence suggests the complaints are not credible." *Mersman v. Halter*, 161 F.Supp.2d 1078, 1086 (N.D. Cal. 2001), quotations & citations omitted ("The lack of specific, clear, and convincing reasons why Plaintiff's testimony is not credible renders it impossible for [the] Court to determine whether the ALJ's conclusion is supported by substantial evidence"); Social Security Ruling ("SSR") 96-7p (ALJ's decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight").

An ALJ can consider many factors when assessing the claimant's credibility. *See Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). The ALJ can consider the claimant's reputation for truthfulness, prior inconsistent statements concerning his symptoms, other testimony by the claimant that appears less than candid, unexplained or inadequately explained failure to seek treatment, failure to follow a prescribed course of treatment, claimant's daily activities, claimant's work record, or the observations of treating and examining physicians. *Smolen*, 80 F.3d at 1284; *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007).

As indicated above, the first step in assessing Plaintiff's subjective complaints is to determine whether Plaintiff's condition could reasonably be expected to produce the pain or other symptoms alleged. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). Here, ALJ Biesman found that Plaintiff suffered from the severe impairments of status post-right tibia fracture and back pain. AR 36. Additionally, the ALJ found that "claimant's medically determinable impairment could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." AR 40. This finding satisfied step one of the credibility analysis. *Smolen*, 80 F.3d at 1281-1282.

Because the ALJ did not find that Plaintiff was malingering, he was required to provide clear and convincing reasons for rejecting Plaintiff's testimony. *Smolen*, 80 F.3d at 1283-1284; *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996) (as amended). When there is evidence of an underlying medical impairment, the ALJ may not discredit the claimant's testimony regarding the severity of those symptoms solely because they are unsupported by medical evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991); SSR 96-7. Moreover, it is not sufficient for the ALJ to make general findings; he must state which testimony is not credible and what evidence in the record leads to that conclusion. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993); *Bunnell*, 947 F.2d at 345-346.

In this case, the ALJ determined that Plaintiff received "rather mild medical treatment" for her back pain and that her treating physician's opinion appears to be based upon Plaintiff's subjective assertions concerning pain where the objective medical record does not support those allegations. These are clear and convincing reasons upon which to find Plaintiff's testimony not credible. *See Tidwell v. Apfel*, 161 F.3d 599, 601-602 (9th Cir. 1998) (finding a mild or minor medical condition with all other tests reporting normal provides a basis for rejecting claimant's testimony of severity of symptoms); *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (inconsistencies between the record and medical evidence supports a rejection of a claimant's credibility; no medical treatment or a conservative level of medical treatment has been found to suggest a lower level of pain and functional limitations); *Fair v. Bowen*, 885 F.2d 597, 603-04 (9th Cir. 1989) (claiming severe conditions yet receiving minimal, conservative, or no treatment is a basis to reject claimant's testimony; additionally, failure to follow prescribed treatment can be considered in determining credibility); *see also* 20 C.F.R. § 416.929 (objective medical evidence can be used in determining credibility; inconsistencies in evidence will support a rejection of credibility).

Additionally, an ALJ can look to daily living activities as part of the credibility analysis. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005); *Fair v. Bowen*, 885 F.2d at 603; *see also Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). If a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit a claimant's allegations. *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d at 600. The ALJ must make "specific findings relating to [the daily] activities" and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination. *Orn v. Astrue*, 495 F.3d at 639. Here, ALJ Biesman found that although Plaintiff indicated she could perform very limited daily activities, she is able to "live alone and [to]

11

1  perform light chores, cooking and shopping" and that the evidence shows "that she should be at
2  least capable of performing most light household chores and daily living tasks."

3       Even assuming for the sake of argument that the ALJ erred with regard to Plaintiff's
4  ability to perform the activities of daily living, that error is harmless where the other reasons
5  offered are proper and are supported by substantial evidence. *See Carmickle v. Commissioner of*
6  *Social Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (*citing Batson v. Comm. of Soc. Sec.*
7  *Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) ["So long as there remains "substantial evidence
8  supporting the ALJ's conclusions on . . . credibility" and the error "does not negate the validity of
9  the ALJ's ultimate conclusion" such is deemed harmless and does not warrant reversal"]).

10       Finally, Plaintiff asserts that her poverty and past homelessness constitute a legitimate
11  reason to forgo treatment for back pain, relying upon *Gamble v. Chater*, 68 F.3d 319 (9th
12  Cir.1995). In *Gamble*, the court emphasized that disability benefits could not be denied because
13  of a claimant's failure to obtain treatment that he cannot afford for lack of funds. *Id*. at 321.
14  However, unlike *Gamble* where the medical record clearly established a severe impairment and
15  the claimant's inability to afford the medical care necessary to treat his condition, here, there is
16  little to no evidence of a severe back impairment prior to 2008. This coupled with evidence that
17  Plaintiff had medical insurance coverage through Kaiser distinguishes this matter from *Gamble*.

18       Thus, to the degree the ALJ relies upon a lack of MRI or CT scans that would constitute
19  objective evidence of Plaintiff's back impairments, that finding is not irrational given the lack of
20  medical evidence regarding a severe back impairment prior to 2008 and the fact Plaintiff was
21  able to obtain other medical treatment during the same period. Accordingly, the Court finds
22  there is insufficient evidence in the record to suggest that the Plaintiff was unable to afford any
23  medical treatment regarding her back complaints so as to render the ALJ's findings in this regard
24  erroneous.
25  //
26  //
27
28

**CONCLUSION**

Based on the foregoing, the Court finds that the Appeals Council's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security and against Plaintiff, Bernadette A. Rams.

IT IS SO ORDERED.

Dated:   **January 7, 2013**                            **/s/ Gary S. Austin**
                                                                    UNITED STATES MAGISTRATE JUDGE